410-1000. Our case for the appellant Ms. Ress and the appellate Mr. Hagel, you may proceed. May it please the court, counsel. My name is Katherine Ress and I represent the appellants in this case. The first issue I'd like to address on appeal is the court's order granting summary judgment on the issue of proximate cause. The standard of review on this issue is de novo, and the trial should afford the trial court's opinion no deference. The burden on this issue is on the plaintiff, and the inquiry of this trial should be limited to the evidence before the trial court at the time of the hearing. Therefore, to uphold the trial court's hearing, the plaintiff's deposition testimony in and of itself, in the light most favorable to the defendants, must show that there was no genuine issue of material fact, so that the plaintiff was entitled to judgment as a matter of law on the issue of causation. Case law holds that to find so is truly extraordinary. In most cases the issue of causation is a question of fact. In this case, there are several glaring reasons why the plaintiff failed to meet its burden. First of all, the plaintiff did not provide any expert testimony on the issue of causation at that hearing. In the case of Brannan v. Sasek, it says that the plaintiff, as a lay witness, is not competent to render an opinion on causation for his health or need for medical treatment. Illinois case law says that when the relationship between an accident and an injury is beyond the ken of the average juror, or requires knowledge that a juror generally lacks, expert testimony is necessary. The Supreme Court, in the case of Voykin v. Estate of De Beers, said that in most cases causation is beyond the ken of the average juror. And the Voykin court harped on the fact that the human body is complex. This is particularly true in cases of spinal or back injuries. The case of Brown v. Baker contrasts a cut on the plaintiff's arm versus a back injury. Whereas the lay person can appreciate that someone cut their arm in an accident and can appreciate the fact that that is a cut on the arm, for lack of a better term, can diagnose a cut, they cannot do so with a back injury. Here we're dealing with a spinal condition that is complicated, as the experts testified in trial, that was complicated by a pre-existing condition. Certainly a lay person could not diagnose a spinal stenosis that was aggravated by an inflammation caused by the motor vehicle accident. And that opinion was not before the trial court at the time of the hearing. If this was an accident which caused a windshield to shatter, and my neck got gashed, but nobody found any glass in my neck, and I said before the accident I didn't have a cut, I didn't have a laceration on my neck that required plastic surgery later on, and I don't know what cut it, but I know the windshield broke when I had this accident. That's all I know. You caused the accident, I ended up with this injury. The inference is the shattered windshield or some piece of metal as part of the accident lacerated my neck and I'm bleeding all over, and that's how the paramedics find me, and there's no other evidence. Would that be proximate cause? In the absence of the defendant putting on another explanation for that, wouldn't that be what you would conclude if you were a trial judge? Okay, we know you caused the accident, and there's this connection and there's nothing to contradict it. I'm going to grant summary judgment. Would that be the same, or would that be an error also to grant summary judgment on that? I think that that's the issue that the Baker court was addressing. The obvious cut. The average person can see that someone is cut after the accident. The average person cannot appreciate that there is an internal back injury that happens as a result of the motor vehicle accident. Well, that would be the extent of the injury. I think we could click on the internet today and find that a vast percentage of America at one time or another suffers from some back complaint, and those who have been in accidents are probably associated with an accident. The rest of us just have to suffer because of old age. Well, to respond, first of all, the plaintiff denied being injured at the accident scene. He said he was not injured at that time, so it wasn't an immediate, my back hurts. It was a delayed onset. Even if this court finds that the plaintiff's testimony alone is enough to establish proximate cause in this case, that doesn't meet the burden of proof. The jurors don't have to accept what the plaintiff is saying as gospel. Well, now we're not talking about summary judgment, though. We're talking about what the jury heard, and the jury heard the medical testimony as well. But the evidence before the trial court was the plaintiff's deposition. In the plaintiff's deposition, there were issues of credibility. There were issues that were brought up that the plaintiff wasn't being entirely credible with respect to his injuries. He testified, again, he did not go to the emergency room on the day of the accident. He went to work as a painter. He didn't go to the emergency room the next day. When he finally did seek treatment, it was seeing a nephropath. He didn't go to a medical doctor. That's circumstantial evidence that a jury should be able to consider, and it was evidence that was before the trial court in the plaintiff's deposition. And it should call into question. The jury is supposed to also consider the bias. Clearly, the plaintiff had a financial stake in the outcome, and in claiming that all kinds of injuries resulted from this accident. In addition, the trial court's ruling was an error because the plaintiff did not identify a specific injury. Approximate cause has been described as a causal link, a link between the defendant's conduct and the plaintiff's injury. In order to determine the cause of something, you need to know the result, and that's just based on common sense. It was indisputable at the hearing that the plaintiff didn't establish approximate cause for all of his injuries, so where do you draw the line? He was claiming pain and stiffness for four years. If it was limited to the day after the accident, the trial court should have had that in its ruling. It wasn't limited to a specific injury. Would you have let him testify to a specific injury? Would that have been admissible? A lay witness testifying with that degree of specificity, how would they do that? Well, Your Honor, I don't... Are you really saying you needed to have an expert? Yes. The plaintiff needed an expert. Yes, you need to have an expert, but even if this court says that an expert wasn't needed in this case, those are the reasons for that. Approximate cause is a conjunction. It must be established for every injury and for every medical bill, and by failing to identify those injuries and what we're specifically talking about, it was confusing to the jury, and the ruling just didn't make a lot of sense. I'd like to address the second issue on appeal, the court's directed verdict on the issue of medical special damages. Courts are advised that a directed verdict on this issue is almost never appropriate because the credibility of the witnesses comes into play, and jurors are supposed to use their own experience and knowledge in coming up with an amount. The trial court has no right to order a directed verdict if there are reasonable inferences based on the evidence that creates a question of fact. Case law is sparse on addressing a directed verdict on medical specials, but there is the case of Baker v. Hudson cited in my brief. At that case, the trial court directed a verdict on medical special damages, and the court of appeals said that that was an error because there were some facts that gave rise to an inference that maybe not all of the medical specials were related to the accident. In that case, the plaintiff did go to the emergency room after the accident, but then didn't follow the emergency room doctor's recommendation to follow up for treatment. When he went to the chiropractor, it was at the referral of his attorney. When he completed his first round of chiropractic therapy, he was 95% approved, and then there was almost a year gap in treatment. And the court said that those factors were enough to create an issue of fact, and the directed verdict was improper. In our case, there are much more compelling facts to support that the plaintiff was overstating the severity and duration of his injury. As I addressed a little bit earlier, his initial treatment, he denied being injured at the scene, didn't go to the emergency room the day of the accident, all those factors call into question the initial treatment. The plaintiff didn't see a medical physician for a substantial period of time after the accident. When he did see Dr. Harms, which was about six months after the accident, Dr. Harms' physical examination of the plaintiff was almost normal. He did review an MRI, and this MRI revealed a pre-existing condition that was significant. And that's a factor in this case that wasn't present in the Baker v. Hudson case, but it makes the court's ruling on motion for directed verdict especially inappropriate in this case. Dr. Harms testified that based on this pre-existing condition, there was a 95% chance that within the next 20 years, any time within the next 20 years, he was going to require surgery, and he was almost certain that the plaintiff was going to experience these type of symptoms. Now, we're dealing in this case with an aggravation of a pre-existing condition. That's what the doctors testified to. And the courts say that an aggravation of a pre-existing condition, the Supreme Court said that even if a prior condition doesn't negate causation, it may still be relevant to the question of damages, because the jury could find the defendant only liable for that amount that aggravated the condition or increased the symptoms. There was also evidence that the surgery performed by Dr. Harms was not a result of the motor vehicle accident. The purpose of the surgery was to deal with the lumbar stenosis, a pre-existing condition. It was to make room for the spinal nerves. In addition, part of the surgery was on the right-hand side of the plaintiff's back. Now, it is indisputable that the right-hand side of the plaintiff's back was a pre-existing condition, and that the right-hand side of the plaintiff's back was not affected by the motor vehicle accident. So there's no question that the treatment rendered to the right-hand side of the plaintiff's back was non-accident-related treatment. The court, by awarding the plaintiff all surgical costs, also included non-accident-related treatment. The jury should have been able to consider that, at least. There are also facts that the 2010 treatment was not related to the accident. Here, we're talking about a two-and-a-half-year gap in treatment. Before the gap in treatment, Dr. Harms said the plaintiff was a star patient. He said, go live happily ever after. Then there was a two-and-a-half-year gap in treatment. During this treatment, the plaintiff was working as a painter. He was hunting. He was fishing. He testified that there was nothing he could not do. And during his discovery deposition, he said that he had no intent to return to treatment. And in 2010, he did. And there was also evidence of other reasons why he returned to treatment in 2010, one of which being this litigation. It was a couple months before litigation. When he went to see Dr. Harms, he said he was still doing fine. He said he wanted to make sure his back condition was nothing unusual. The jury could have thought he was going there to get an opinion for this litigation. In addition, I just want to make sure I understand this. On the directed verdict portion, are you saying the trial judge directed the verdict, directed the jury to award damages for the injuries or for the back ailment not related to the accident? Yes. Okay. The 2010 treatment was to the court awarded. There was also evidence that this treatment was to deal with the pre-existing condition. The pre-existing condition that Dr. Harms said would inevitably become symptomatic did. And there's evidence to support this. Chiropractor Pride said in 2007, chiropractic treatment wasn't helping this patient's condition. But then in 2009, the condition was different and the chiropractic treatment was helping the plaintiff. And he needed it from that point forward. Chiropractor Pride also testified that the condition in 2010 was a combination of arthritis and insult. Arthritis was present in the plaintiff's back indisputably before the motor vehicle accident. So all those factors discussed certainly create a reasonable inference in favor of the defendant, if not a compelling argument that some of the treatment was not related to the motor vehicle accident. The last issue I'd like to address is the court's refusal to allow Attorney Kepke to participate in the jury trial. First of all, Rule 219 sanctions are deemed void unless a party has afforded written notice. In this case, there was no written notice. Wasn't there a published local rule? That's correct, Your Honor. But I interpret the case law to not include published rules because of this. If they were to interpret published rules, every rule of discovery, you would have noticed that you could get sanctions immediately upon breach. And the case law, as I interpret it, says you need notice that Rule 219 sanctions are going to be on the table prior to the hearing. Counsel, if I were the trial judge and I said, this is a day-and-a-half trial, and I'm going to give you 15 minutes for closing argument, and then I'll give you five minutes in rebuttal, and you hit 15 minutes and I stop you, that's appealed. Was it an abusive discretion for me to limit your time in closing argument? When I advised you in advance, that was the time limit. I think that it is not. I think that it is simply the court enforcing its rule in terms of management of that case. If I did it to you and I didn't do it to other people or I didn't do it to your opposing counsel and so forth, it could be an abusive discretion. I don't understand how you're terming this as a sanction. It seems to me, or one could argue, that it is simply, look, you happen to be the person, I think, who is before the court on summary judgment, and you were orally advised, now be sure that counsel that's going to try the case is here. And then on that day, he doesn't show, for a reason. You had the opportunity to move to continue. He could have instructed you to move to continue. Your office could have done so. Given that opposing counsel remained silent, they might very well have said, we can kick this. Your Honor, I agree. That doesn't cause any great inconvenience to us. We'll kick it over. But we don't know because nobody asked. So the judge says, you know, you didn't show, you didn't follow the rule. I'll let you participate by being second chair. You can talk outside the presence of the jury, but I'm not going to let you question witnesses or argue. How is that a sanction that requires notice other than the notice that was already received? Well, Your Honor, first of all, the court's conduct has to be reasonable in light of all the circumstances. And here, there is no history of violation of discovery rules from Mr. Koepke. But that puts it back into the ballpark of the sanction. You're right. If it's a draconian sanction for a violation of a discovery rule and there's otherwise been a showing of good faith in everything that you've done, then you've got a semblance of an argument. But my point is, this wasn't a violation of a discovery rule. It doesn't have anything to do with evidence. It has to do with, you know, I don't know that I like the analogy. I'm the captain of the ship, the trial judge. This is the way I manage my courtroom because we're busy. This is what we do. If you don't give me a witness list, then I'm not going to testify. None of that necessarily ought to be cast as a sanction. If it is, then you have to have hearing whether you're going to impose a sanction, you notice, and you have many trials within trials based on the court simply enforcing its own orders. Well, to answer your question, Your Honor, I do believe it is a sanction under Rule 219. Rule 219 is the court's means to, for lack of a better word, sanction parties for violations of the type of orders that we're talking about in this case. So it's my position that it was a sanction and it was unreasonable. There's no history of violation by Mr. Kepney. Mr. Kepney's conduct was in good faith, which is a factor courts look at. He had a personal emergency, although the court didn't see it as such. To Mr. Kepney and his family, it was a personal emergency and he could not be there. Is there anything in the record that shows that the defendant hired, specifically hired this counsel and was relying upon his expertise in representing them at trial? None other than statements by counsel. I mean, the pleadings are filed by the firm. Right. You appeared at some re-judgment, which is pretty important. Other members of the firm, I think, appeared. The record shows how is it unreasonable? What's the prejudice? One could then also go on and say there wasn't a defense. Well, Your Honor, it was highly prejudicial. I did appear at the hearing on the motion for summary judgment. The major issues in that did not have to deal with all the medical bills and all of that sort of thing. We're talking about four years that this guy was complaining of pain and suffering and four years that there was treatment interspersed. I had four days to prepare for it. And even if I had prepared for a motion for summary judgment, you can't say that just because you're prepared for a motion for summary judgment, you're automatically prepared to try the case. There were three doctors that were called live. And as far as your comments regarding my clients hiring the firm, the discussions regarding who was to try the case was between the client and the attorney. And in Illinois, there's a deeply rooted principle that a client is allowed to choose the counsel of his choosing. And, you know, a trial lawyer is different than a lawyer that might argue motions and that sort of thing. I think it's commonplace that you have a trial lawyer and then you have a lawyer that does the other stuff. So I see that my time is out, and I thank you. Thank you. We'll hear from you in a moment. May it please the court, counsel. My name is James Hagel, and I represent Dave Cara, the plaintiff, happily in this case. Three issues have been raised, and I'd like to address those three issues, none of which mandates a reversal of the judgment on the jury verdict in this case. To address the last issue that you just spoke of first, whether there was a reversible error because of the court prohibiting Mr. Kepke from trying the case. I suggest to your justices that if you did reverse the case on that basis, you would be sending a clear message to the Sixth Judicial Circuit. You'd be telling them, you know what, you can create rules, which you have the right to do, pursuant to the Supreme Court rules and the authority of the state, but you know what, we're not going to enforce them. They don't mean anything. Their rule is clear. The attorney that intends to try the case, Rule 3.5, shall appear. Very clear. I agree with Justice Knapp. This really isn't a 219 sanction against a party. This is a court enforcing one of its administration of justice rules and procedures, which allows cases to be orderly and handled in an expeditious fashion to occur. And if you look at the record at that pretrial conference, the defendant in their brief said, well, we didn't object to anything. Well, guess what? We did, the plaintiff, and guess what? Judge Ford talked about a lot of issues. Talked about peremptory challenges, how the jurors would be seated, timing issues, scheduling, and that's why Judge Ford said, you need to be here, because, you know, you need to hear it, so we're not revisiting these issues. Why wouldn't it have been sufficient for him to say, I don't want to hear from you, counsel, you skipped that final conference, you can try the case, but I don't want to hear from you anything I've already ruled on or any procedural matter, and if you bring it up once, I'm going to tell you to go get a toothbrush over at Costco. Because that's not what the rule says. The rule is very clear. Well, I understand, but... If you want to give the rule any meaning, it's implicit what the rule requires. If you're not there, you don't try the case. That's pretty simple. We're told to wear a tie when I come here. I'm not going to be allowed to argue here if I come in Bermuda shorts. Will we strike the oral argument? You would not let me argue. You would proceed with their argument, and you would decide the case without... And if you leave and come back with a tie on, would we let you do rebuttal if positions were reversed? I don't know if that would be up to you. Depending on how reasonable we were. And that is the issue. Is this reasonable? Was this an abuse of discretion? You know what, that same rule applied to me. I didn't decide I wasn't going to show up. We showed up. We filed the rule. If a rule doesn't mean anything, they apply to both sides, and they've got to be applied equally and fairly, and that's all Judge Ford did. And, you know, one other point you raised, and I agree. There is absolutely nothing in this record that suggests that this defendant or defendants, they didn't want to bother to show up for the trial, but they hired Mr. Koepke? Where's an affidavit? Where's anything even by Mr. Koepke that indicates he was hired? There's nothing except the statements in the brief. You hired a firm. You hire everyone. Everything was signed by Koepke and Hillenbrand, by various lawyers along the way. And the other point, which you have to think of, what's the harm? Are they saying that Ms. Ress, who, by the way, is here now to argue the appeal, is incompetent, that this jury misconsidered the evidence because of her incompetence? They got a fair trial. She brought everything out. And, in fact, if you read the record, often during the trial, I as an experienced attorney heard, oh, I'm so inexperienced, my boss is sitting here watching me. There may have been some sympathy that lowered the verdict, but that would be speculation. But the point is, it didn't affect the result, and there's no evidence of it. Next, I want to move to the summary judgment. Counsel still, I don't think, understands, and I suggest this politely in front of her, the difference between summary judgment and the trial. Because what you have to show to get summary judgment on causation is different than when you're proving major extent and duration of injuries and asking for pain and suffering past and future, loss of normal life past and future, future medical. There was no genuine issue of material fact that Dave Kira suffered some injury. And this is an instance where, in his deposition, he said, I had no prior problems. My neck and back were fine. You get rear-ended, throw him out of his vehicle, and then, as the evening went on, he noticed stiffness and pain in his neck. It worsened the next day. He went to see Dr. Gibbous. That is evidence of some injury. And there's one thing the counsel said, Mr. Koepke actually said, when we argued the directive verdict before the judge. Couldn't the jury just not believe the testimony, though? You have to look at the evidence in the light most favorable to the non-movement, and no, there is evidence of some injury. He incurred a medical bill the next day, even if that's the only thing we claim. In fact, Your Honor, we could have proceeded to trial without a medical testimony, just Mr. Kira, but we couldn't have asked for future medical. We couldn't have asked for continuing pain and suffering, permanency of injury. He can't testify to those things. There was nothing about his credibility, about this accident, how it occurred. There was no evidence. You know what? It was just a little fender-bender. You weren't affected inside your vehicle. Contrary evidence that you had some other problem. But the other is that he initially didn't believe that he was injured and didn't initially receive treatment. Right at the scene, I think the judge considered the overall picture, and looking beyond this case, that's very commonplace. That's not beyond the account of the average juror, to know when you're initially subject to an accident, you might not feel anything, but as time goes on, you notice the pain and stiffness in your neck. Just that there was some injury and some damage caused by this collision. Even if he went to the doctor the next day, let's assume you're right. He says, I wasn't injured. But you know what? His wife, of course his wife had been deceased, but somebody, a family member, tells him, you know what, Dave, just go get checked out the next day. You never know about these things. They creep up. You know, we want to get a doctor to look at you. Isn't that damage? Isn't that something that's compensable? I mean, isn't that reasonable? You get hit in an accident, the day wears on, you get worse, you go to the doctor the next day. Judge Ford didn't say, he has suffered a permanent injury, I find as a matter of law that he has an aggravation of a preexisting condition. That's not what happened in this case. We don't have to prove the specific injury at summary judgment, but just that there was some damage caused by their negligence, duty, breach of duty, and caused some damage. And that's what occurred in this case. There was no impeachment of Dave Cara. No one said, hey, I saw him out doing something the next morning when he went to Dr. Gibbous. He told me he wasn't injured, never was injured. There wasn't any impeachment. His testimony was not inherently incredible. There was nothing about his cross-examination at that deposition which would lead you to believe that there was some jury question about him saying he was injured. And there is ample authority in the state of Illinois that we could have even gone to trial, not just summary judgment, without a doctor. But we sure wouldn't have gotten $155,000 without medical testimony. The last issue I want to talk about is that directed verdict. The court didn't direct a verdict on all the medical expenses, although we asked for it. The court awarded everything through 2007, through September 2007, which was the last time Dr. Harms saw the patient, as well as the 2010 follow-up visit when the plaintiff decides, I'm still having problems. Remember he said something about my back was telling me something? He goes, where would you go back to? I'd go back to the surgeon. That's what Mr. Cara did. That was reasonable. You have to apply the Pedrick standard in his progeny. You know that standard better than I. But you have to view the evidence in a way more favorable and most favorable to the non-moving party, and see if the evidence so overwhelmingly favors the movement that no contrary verdict would stand. You have to determine if there's a substantial factual dispute considering this evidence. Is there any conclusion that you should reach when you look at the evidence that could lead to the opposite, that this was not related? Defendant keeps harping on pre-existing condition. That's all they talk about. And they really talk about it for three things, don't they? One, the surgery. Two, well, part of the surgery wasn't related, the right side versus the left side. And three, the Harms visit of June 2010. And then they keep arguing, well, there's this pre-existing condition, which explains it all. But you know what they're forgetting about? Voykin. Voykin is the controlling case. It doesn't matter that he had an asymptomatic pre-existing condition. What they have to do is have medical testimony to say that that condition, which predates the accident, whether it's one second, one week, one year before, is causative of what's occurring after the accident. And they don't have that. That did not occur in this case. And I want you to look at one other thing that's very telling in this case, and it's controlling. They stand before you now, and they argue that this pre-existing condition creates the issue of fact that should have precluded the entry of directed verdict on the medical. A plaintiff made motions in eliminate, number 9, 10, and 11. Number 10, number 9 is a general one relating to Voykin, saying you can't put in something about pre-existing condition unless you have medical testimony to corroborate it and show that it's causative of what occurred after. Number 10 is specifically on the right side, that there's no testimony that Dr. Harms won't charge more because of doing the right side. He said he wouldn't have done the surgery for the right side, and guess what? They agreed to 9, 10, and 11. They took it out of the case. They didn't make a record. They waived that. They said, we agree. We're not going to object to it. Maybe it was part of their strategy to get Mr. Koepke to try the case, which obviously wasn't the case. Who knows? It doesn't matter. They waived that. Would the motion eliminate have precluded, or did it preclude, defense from asking Dr. Harms? Understanding the standard of medical care, once you got in there, you needed to correct the other side as well. I think there was some reference to that's what I've got to do because I'm in there. Were they precluded from asking, did you charge an additional amount, or did that cause the surgery to be more extensive thus? It never is. Would the motion have prohibited them from asking that? They wouldn't be bringing it up. He's bringing it up. He's bringing up the fact I operated on the other side. That was on their cross-examination. Our motion eliminate precluded them from arguing that the entire cost of the surgery or that that surgery shouldn't be compensated in full because of that. But your opinion, they could have asked the question. Doctor, understanding that you felt that it was a medical necessity  to have surgery or do the corrective procedure on the right side as well, did that cause the surgery to last longer, and did you, therefore, charge more for it? Did the operating room take longer? Whatever the expenses are. And they could have had an expert who said, oh, when you do the right side, in my opinion, that surgery was, I guess they'd have to have some medical damage witness, like a nurse consultant. But even without the expert, they could have asked the doctor that. I think they could have. And he might have said, well, you know, I added a... Well, the truth is they didn't because the bill is just for the lumber, you know, the laminectomy. But the point is they never had evidence that the surgery cost more because of the addition of the right side. And if that had been in evidence, whether it was through Dr. Harms, cross-examination, or someone else, I would probably not have brought the motion to eliminate. The point was they didn't have that evidence. That bill was not divisible. There was no evidence to support an argument. They agreed to it. But the last point was motion to eliminate number 11. That was agreed to as well. And that's very specific, that they could not argue that the surgery was not related to the collision in May of 2006 because of Boykin. And they had no testimony. You know what? They agreed to that. So how can you agree to it? There's nothing before the jury about Boykin, about a preexisting condition causing it absent the aggravation. And then on appeal, come before you and say, well, the judge shouldn't have directed that verdict because, you know, there was this preexisting condition. When was the jury ever considering that? There was no evidence before the jury. So Judge Ford appropriately directed the medical bills. And there was no contrary evidence. There was no issue here. There was no corollary or there was no reasonable inference that was caused by anything else in this case. It was a very simple case. They brought no medical testimony into the case. And if you look at the record, it's interesting to note they had an expert and then they abandoned them. So it's not like they didn't even have the opportunity to have one. They thought about it. Then they dropped them. And they came to court just with a cross-examination and admitted to the motions in limine. So the two objections to surgery go out the window with the motion in limine. There's no issue there. Then we look at, lastly, the 6-10 visit with Dr. Harms. All he did was see the plaintiff and say, you know what? I can't give you a new bath. You're going to have to live with this. And as he said in his deposition, in my opinion, when I saw him in June 2010, that was for an aggravation of the preexisting condition, which made him symptomatic sooner than he should have become. And that includes the June 4, 2010 visit for $78. And lastly, I suggest to you, Your Honors, that considering that last point, that that would certainly be harmless error in the event you said, well, Judge Ford should have given them everything through 2007 because of the motions in limine and the lack of Boykin testimony. But you know what? Maybe you shouldn't have given them that one bill. However, the fact that the jury went on to consider Dr. Pryde's bill, which the court basically highlighted for them and said, you know, they get these other bills, but you know what? This one you decide on. The jury gave to the penny what Dr. Pryde did, which corroborates that they would have given Dr. Harms' bill if they had been asked to. There's no question. They also gave, don't forget, future pain and suffering, future loss of normal life, and future medical. Do you think there's any question in this juror's mind that Dave Cara suffered a permanent injury because of the May 2006 collision? Absolutely not. And they would have awarded a visit to Dr. Harms. And lastly, about the point that Dr. Harms already said it, I want to reiterate it. Isn't that reasonable? Is there any question about the credibility of going back to your surgeon? Would any one of you not go back to your surgeon if your problem persisted and wasn't getting better? Who's the first person you go to? They want you to speculate, well, there's other reasons the jury could have thought about. Oh, his lawyer sent him back. Was there any evidence of that? No. Was there any evidence he went back, like the defendant, like the plaintiff in the case they cited, said to the doctor on the questionnaire, well, can you find any injury? And by the way, my lawyer just sent me to two different doctors. After the first one didn't work out, he sent me to another doctor. And I think the Baker case. So, Your Honor, for all these reasons, we would ask you to affirm the judgment entered below on the jury verdict. Thank you very much. Thank you, counsel. Ms. Raskin. First of all, with respect to the issue of medical special damages, I think counsel misinterprets the Voykin case. Voykin was dealing with the admissibility of a preexisting condition. It was not dealing with whether the plaintiff met the burden of proof. It said in order for it to be admissible, these things have to be met. Here, the evidence of the preexisting condition was already admissible. Dr. Harms' was an evidence deposition, and it was before the court, even before the motion in Lemonade was argued. Dr. Harms' testimony that the right side of the back was operated on, all of that testimony was already before the court at the time of the motion in Lemonade. So the motion in Lemonade was really just limited to the fact that we could not argue the right side. Now, and the evidence was there in front of the jury. Now, we don't need to argue every theory of the case in order for the jury to consider that. The motion in Lemonade did not preclude the jury to consider it. It was not a directed verdict on the issue of the surgery and the fact that all of the medical bills were related. It just precluded arguments that the facts that were before the court in and of themselves were enough to give a reasonable inference that part of the surgery was not related to the accident. In addition, Boykin talks about the fact that the burden of proof does not shift to the defendant. In any case, the burden of proof does not shift to the defendant. The defendant has a right to put on a defense but does not have a duty to put on a defense. And that case goes into detail regarding that. With respect to the right side surgery again, certainly if Dr. Harms had opened up the plaintiff's back and had observed that there was a tumor inside the plaintiff's back and it was a standard of care, you have the back open, extract the tumor, certainly the plaintiff wouldn't be claiming that he was entitled to medical bills relating to the treatment of that tumor. The plaintiff also said that, and I believe the court had brought up, that there was no testimony saying X amount of hours were spent on the right side or X amount of charges were spent for the right side. Well again, that's shifting the burden of proof. It's the plaintiff's burden of proof to prove that all of that medical treatment, if they're asking for it, was related to the motor vehicle accident. The case of Ford v. Gristle says that a pre-existing condition, like the plaintiff's back condition and in this specific instance, the right side of the plaintiff's back, can make it less likely that the defendant caused an injury and establish that the pre-existing condition for which the defendant is not liable and reduce those damages accordingly. It doesn't say you need to have an expert testimony to distinguish, well, 25% of this was the result of the accident and 75% was not. The jury's determination and any decisions made from the jury were after the fact. It was after the fact that the court linked a two and a half year gap in treatment and said that these symptoms that the plaintiff is experiencing in 2010, because I'm relating Dr. Harm's treatment, those symptoms are related to this motor vehicle accident. You can't tell me that it didn't affect the jury's decision to award the chiropractor's treatment. That linked up all of that pain and suffering and that told the jury those symptoms are related to the motor vehicle accident. That was completely contrary to our theory of the case. When I gave the opening statement, it was clear that our theory of the case was there's this huge gap in treatment. The plaintiff had a great recovery. He was called the star patient, said go live happily ever after, and that was our theory of the case. The judge's ruling completely discredited that. So looking at what the jury did after the fact is inappropriate, I believe. With result to the issue of proximate cause, counsel said there was nothing uncredible about the plaintiff's testimony. Well, that's not for counsel to decide and it's not for the judge to decide. It's for the jury to decide. As I pointed out, there were several things that called into question the plaintiff's testimony in his discovery deposition, which was the only evidence before the trial court at that time. Lastly, with respect to the last issue, we believe the 219 ruling that attorney Kepke could not participate in the trial was a sanction because it was the defendant's right to counsel of his choosing. It was the defendant who was harmed. And I see that my time is up. We ask for a new trial. Thank you. Thank you, counsel. Counsel, I don't know what your level of experience was before the trial, but I would imagine that having gone through the trial and now the appeal of that same trial in the intervening year, you've gained a good deal of experience and I think you did a good job in the case and a good job on the appeal. Thank you.